IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adelina Medina Salazar, et al., | No. CV 05-283-TUC-FRZ |
| Plaintiffs, | **ORDER** |
| vs. | |
| Aladin Basic, et al., | |
| Defendants. | |

Pending before the Court are the parties' motions *in limine*, and a related "Motion to Compel Production of Documents, Complete Deposition of Esthela Espin, Conduct Expert Depositions, Continue Deadline to Disclose Economist Report, Continue Deadline to File Joint Proposed Pretrial Order" ("Discovery Motion") filed by Defendants Aladin Basic and Star Van Systems. For the reasons stated below, the motions are granted in part and denied in part.[1]

# I. BACKGROUND

This is a wrongful death negligence case. Plaintiffs are the surviving spouse and children of Fortino Salazar, who died in a highway accident when a tractor-trailer driven by Defendant Aladin Basic and owned by Defendant Star Van Systems, Inc., rear-ended Fortino Salazar's van, propelling it into a tractor-trailer driven by Defendant Terry D. McLin and

---

[1] The Court has determined that the issues have been fully and adequately briefed and that oral argument would not aid the Court in its understanding of the issues. Thus, the Court finds that this case is appropriate for resolution without oral argument.

owned by Defendant S & W Trucking that was stopped, undriveable, on the highway because McLin had been involved in an accident with another tractor-trailer. For purposes of this Order, Plaintiffs will be collectively referred to as "the Salazars"; Defendants McLin and S & W Trucking as "McLin"; and Defendants Basic and Star Van Systems as "Basic."

In the first of two accidents, McLin was driving a tractor-trailer at night in one of the two eastbound lanes of Interstate 10. He attempted to pass another tractor-trailer, but struck the tractor-trailer and the highway guardrail. McLin's tractor-trailer stopped, undriveable, in the right-hand eastbound lane. After the accident, McLin placed reflective triangles on the white line between the two eastbound lanes. Emergency responders arrived at the accident scene shortly thereafter; they used a variety of reflective cones, flares, and flashing lights to block off the lane where McLin's tractor-trailer was stopped, and attempted to slow and redirect traffic passing through the accident scene. Approximately two hours after the first accident, McLin's tractor-trailer still remained disabled in the right-hand eastbound lane and the emergency responders remained at the accident scene. In the second accident, Fortino Salazar was driving a van in the left-hand eastbound lane, slowed down, and was proceeding through the first accident scene. Basic, driving a tractor-trailer, rear-ended Fortino Salazar's van. The van was propelled into McLin's tractor-trailer in the right-hand lane. As a result, Fortino Salazar died.

The Court denied Defendants' motion for summary judgment. As such, the parties were required to file their Proposed Joint Pretrial Order and any motions *in limine* within 30 days of that Order. The Court has received these documents from the parties, and has also received Basic's related Discovery Motion. Basic filed its Discovery Motion shortly before the Proposed Joint Pretrial Order and motion *in limine* deadline, and as such, the Discovery Motion became fully briefed only after the deadlines expired and the motions *in limine* and the Proposed Joint Pretrial Order were filed by the parties. As the Court's ruling on the Discovery Motion affects numerous pending motions *in limine*, the Court will address the Discovery Motion first, and then resolve any remaining motions *in limine*.

1  **II. BASIC'S DISCOVERY MOTION**

2  Throughout Basic's motion, they argue that additional discovery should still be permitted
3  at this point in the litigation because Plaintiffs have wrongfully obstructed their ability to
4  obtain relevant information in this case. Basic's primary complaint of obstruction concerns
5  Plaintiffs' refusal to disclose tax returns and related financial documents concerning
6  Plaintiffs' family-run clothing manufacturing business (Danyello's Clothing). This issue is
7  at the core of Basic's Discovery Motion which requests the compelled disclosure of Plaintiffs'
8  tax records, completion of the deposition of Esthela Espin who was an accountant for the
9  business, and to continue the deadline to disclose the economist report as Basic does not have
10 the tax and financial records to generate an economist report. Defendants argue that
11 Plaintiffs' tax records are needed because Plaintiffs' assert loss of income damages stemming
12 from Fortino Salazar's death as it detrimentally affected the business. As Fortino Salazar was
13 intimately involved in the business, was the patriarch of the family business who actually
14 kept track of the finances, and there are inadequate or otherwise indecipherable financial
15 records pertaining to the business, Basic argues that it must obtain Plaintiffs' tax records
16 related to the business to properly evalaute and defend against Plaintiffs' loss of income
17 damages claim. However, as Plaintiffs have maintained throughout this case, they argue that
18 the tax records and related financial documents are privileged documents under California[2]
19 law, and they are not required to disclose those documents in this litigation.

20 As a threshold matter, the Court notes that the discovery dispute at bar should have been
21 fully addressed to the Court in December of 2005. On December 12, 2005, Basic filed a
22 similar motion (Doc. #34) essentially raising the same issues currently before the Court;

23

24 [2]Plaintiffs argue that Arizona's choice of law cases would apply California privilege law
because Plaintiffs are residents of California. Plaintiffs, however, do cite any Arizona authority
25 pertaining to choice of law issues demonstrating that California law must apply. Nevertheless, a
review of Basic's Discovery Motion and reply brief shows that Basic apparently does not dispute
26 that California's privilege law may apply under these circumstances. As Basic apparently does not
dispute that California law may be applicable and the Court finds that Plaintiffs are required to
27 disclose their tax records under California law, the Court will apply California law for the limited
28 purpose of resolving this specific privilege dispute.

- 3 -

1 Plaintiffs opposed the motion by arguing that they were not required to disclose their tax
2 records as the records were privileged under California law.  Basic never filed a reply brief
3 arguing that the privilege was inapplicable, and Basic's initial brief also never addressed the
4 applicability of the tax record privilege.  As such, in January of 2006, the Court issued an
5 Order permitting additional discovery, but the Court never addressed the privilege issue as
6 it was not properly presented to the Court.  In the January 2006 Order, the Court specifically
7 stated that "Defendants' discovery issues only concern discovery on a narrow issue –
8 damages for loss of earnings and future earnings.  There is . . . no good cause to extend the
9 discovery deadline so Defendants can obtain discovery of tax returns or Form 1099s.
10 Defendants have not addressed Plaintiffs' claim that extending the discovery deadline on this
11 basis is unnecessary because these documents are privileged." *See* Doc. #44 (1/31/06 Order
12 at 3-4).  In light of these circumstances, the Court could find that Defendants have waived
13 their right to compel disclosure of the tax records based on their failure to address the
14 privilege issue in December of 2005.  However, the Court finds that such action would be
15 unduly harsh as it would seriously undermine Defendants' ability to obtain obviously relevant
16 information pertaining to its defense against Plaintiffs' loss of income claim.  Now that the
17 privilege issue has been properly raised and argued before the Court, the Court agrees with
18 Basic that it is entitled to Plaintiffs' tax records.

19 As both parties recognize, California case law has created a judicially recognized privilege
20 against disclosure of tax returns and related financial records.  *See Weingarten v. Superior*
21 *Court*, 125 Cal.Rptr.2d 371, 375-376 (Ct. App. 2002).  "The purpose of the privilege is to
22 encourage voluntary filing of tax returns and truthful reporting of income, and thus to
23 facilitate tax collection." *Id.*  However, the privilege is not absolute, and may be lost where:
24 (1) the circumstances indicate that a party intentionally relinquished the privilege; (2) the
25 assertion of the privilege is so inconsistent with the gravamen of the action that the privilege
26 is considered waived; or (3) public policy outweighs the confidentiality of the tax records
27 involved in the case.  *See Deary v. Superior Court*, 105 Cal.Rptr.2d 132, 138 (Ct. App.
28 2001); *Sammut v. Sammut*, 163 Cal.Rptr. 193, 195 (Ct. App. 1980).

1    Under the circumstances of this case, the Court finds that Plaintiffs' have waived their
2 privilege against disclosing tax records as their assertion of the privilege is utterly
3 inconsistent with the gravamen of their claim for damages based on loss of earnings and
4 future earnings stemming from the death of Fortino Salazar which detrimentally affected the
5 family business. As the record indicates, Fortino Salazar was the family member responsible
6 for the finances of Danyello's clothing, and Basic obviously can not obtain information from
7 Fortino Salazar as he is now deceased. As such, the testimony offered by other family
8 members regarding loss of income issues is problematic, inconsistent, and Defendants have
9 therefore been unable to properly evaluate Plaintiffs' damage claim for loss of earnings and
10 future earnings. Although discovery has indicated that the family business has used Esthella
11 Espin as an accountant, and she could have relevant information, Plaintiffs have disallowed
12 her use and discussion of their tax records such that Defendants have been stripped of their
13 ability to properly evaluate Defendants claim for loss of earnings and future earnings due to
14 Fortino Salazar's death. Furthermore, Plaintiffs have disclosed approximately 500 pages of
15 financial documents, but these documents are apparently indecipherable, and Plaintiffs' own
16 economist expert did not even rely on these documents. Rather, in formulating his opinion,
17 Plaintiffs' expert relied upon the loss of income estimates of other family members which
18 Defendants contend are inflated and undermined by other documentation. In addition, other
19 family members may not have adequate knowledge regarding these issues as Fortino Salazar
20 was primarily responsible for handling the finances of the family's business.

21    A review of relevant California case law shows that under these circumstances, Plaintiffs
22 can not be permitted to continue to insist on having their cake and eating it too by asserting
23 a claim for damages for a purportedly large loss of earnings and future earnings while
24 denying Defendants crucial information to actually evaluate and attempt to refute this claim.
25

26    In *Wilson v. Superior Court*, plaintiff sued his accountant and sought damages for
27 rendering negligent advice that resulted in damages related to the sale of property. *See*
28 *Wilson*, 63 Cal.App.3d 825 (Ct. App. 1976). Although plaintiff placed the allegedly faulty

1 tax advice and the resulting financial impact in issue, plaintiff consistently refused to disclose 2 his tax records to defendants based on the privilege accorded to such documents. *See id.* In 3 rejecting this argument, the *Wilson* court compared the situation to the waiver of the 4 physician-patient privilege: "The whole purpose of the privilege is to preclude the 5 humiliation of the patient that might follow disclosure of his ailments. When the patient 6 himself discloses those ailments by bringing an action in which they are an issue, there is no 7 longer any reason for the privilege. The patient-litigant exception precludes one who has 8 placed in issue his physical condition from invoking the privilege on the ground that 9 disclosure of his condition would cause him humiliation. He cannot have his cake and eat it 10 too." *Id.* at 829 (internal quotes and citations omitted). Likewise, the court stressed that: "By 11 her complaint, plaintiff has placed in issue the existence and the content of her tax returns 12 and the tax consequences of the computations thereon. The gravamen of her lawsuit is so 13 inconsistent with the continued assertion of the taxpayer's privilege as to compel the 14 conclusion that the privilege has in fact been waived." *Id.*

15 Similarly, in *Newson v. City of Oakland*, the court rejected the plaintiff's assertion of the 16 privilege against self-incrimination pertaining to his failure to file tax returns where the 17 plaintiff himself placed the tax records in issue. *See Newson*, 37 Cal.App.3d 1050, 1055 (Ct. 18 App. 1974). The *Newson* court stated in relevant part:

19 . . . Newson argues that the court committed prejudicial error in forcing him to disclose the fact that he had not filed federal or state tax returns. The record indicates that
20 Newson sought damages for loss of income and testified that prior to the accident, he was a door-to-door salesman of educational literature, a warehouseman, and self-
21 employed painting contractor, and that he earned about $700-$1,000 a month. He also indicated that he had no painting contractor's license, was not a member of the painters'
22 union and had no records to substantiate his earnings prior to the accident. His counsel then objected to a question pertaining to the filing of federal and state income tax
23 returns on grounds of the privilege of self-incrimination and moved to strike the question. After a recess, other proceedings and consultation of authorities by all
24 concerned, the court overruled the motion to strike, Newson's counsel withdrew his objection, and Newson testified that although he had earned over $600 a year, he had
25 not filed any income tax returns. The court carefully explained its ruling to the jury, pointing out that Newson had a choice of answering the question or withdrawing his
26 claim for earnings and "couldn't have his cake and eat it too." The court's ruling and underlying rationale was proper and amply supported by the law of this state in the
27 analogous physician-patient privilege.

28

*Id.*; *see also Young v. United* States, 149 F.R.D. 199, 205 (S.D. Cal. 1993)(recognizing that a plaintiff waives any tax return privilege to the extent a plaintiff places tax records in issue by making a claim for lost income in a civil suit); *Fremont Indemnity Company v. Superior Court of Orange County*, 137 Cal.App.3d 554, 559-560 (Ct. App. 1982)(holding that the plaintiff had waived his privilege against self-incrimation in a civil suit pertaining to any factual issues tendered in his complaint; stressing that where plaintiff initiated an action to recover under his fire insurance policy, he waived any privilege as to factual issues relevant to the exclusions in the insurance policy pertaining to arson); *Hartbrodt v. Burke*, 42 Cal.App.4th 168, 174-175 (Ct. App. 1996)(holding that plaintiff waived his privilege against self-incrimination in his civil suit asserting damages stemming from an oral agreement with defendants; defendants asserted that plaintiff recorded the alleged conversation pertaining to any oral agreement, plaintiff refused to disclose the tape of the conversation based on the privilege against self-incrimination, but the court forced disclosure on waiver grounds stating that plaintiff "has insisted on having his cake and eating it too.  That, he cannot do.").

Pursuant to the foregoing discussion, it is clear that under the circumstances of this case, Plaintiffs cannot have their cake and eat it too.  If they wish to proceed with their loss of income claim, the Court finds that they must disclose their tax returns and any related financial records to Defendants.[3]  In the alternative, if Plaintiffs choose to drop this damages claim and focus on other damages (i.e., loss of consortium, emotional distress, etc.), they will not be required to disclose their tax returns and related financial documents.

Assuming Plaintiffs proceed with their loss of income claim, they shall disclose their tax returns and related financial documents as requested by Defendants within **10 days of the filing date of this Order**.  Furthermore, Defendants shall disclose or otherwise submit an amended Economist Report within **40 days of the filing date of this Order**.  As with the

---

[3]The Court notes that Plaintiffs filed a motion *in limine* asserting the tax return privilege in this case.  *See* Doc. #64.  As the Court has already rejected this argument as discussed above, Plaintiffs' motion *in limine* pertaining to this issue is denied.

1 other depositions referenced below, Defendants shall depose Plaintiffs' accountant (Esthela
2 Espin) within **90 days of the filing date of this Order**.

3 On a related note, Defendants seek additional time to conduct depositions of Plaintiffs'
4 experts. Defendants argue that they have not had the opportunity to conduct expert
5 depositions because Plaintiffs have wrongfully refused their requests for depositions.
6 Plaintiffs argue, however, that no expert depositions have proceeded because the deadline
7 for all discovery, which includes expert depositions, expired and any attempt to proceed with
8 expert depositions would be in violation of this Court's Orders. A review of the parties'
9 briefs and record in this case shows that expert depositions have not occurred due to the
10 parties' confusion and disagreement over the Scheduling Order and subsequent Orders that
11 modified deadlines in this case. While the original Scheduling Order contemplated that all
12 expert depositions would be completed by the general discovery deadline, subsequent
13 stipulations and Orders modified the original Scheduling Order leading to the parties'
14 confusion. However, instead of raising this issue at this point in the litigation, the parties
15 should have jointly requested clarification or a brief status conference with the Court to
16 clarify this issue to avoid unnecessary delay. Nonetheless, the Court finds that expert
17 depositions are necessary, and that it would be unfair to the parties to disallow any pretrial
18 expert depositions. As such, the expert discovery deadline is extended for all the parties to
19 this litigation; the parties shall complete any expert depositions within **90 days of the filing**
20 **date of this Order**. In light of these rulings, the parties shall submit an Amended Joint
21 Proposed Pretrial Order which shall supercede the previous Joint Proposed Pretrial Order
22 within **120 days of the filing date of this Order**. The parties shall not incorporate their
23 original Joint Proposed Pretrial Order in any manner; rather, the Amended Joint Proposed
24 Pretrial Order shall be all inclusive.

25 Lastly, a review of the record shows that the parties submitted several motions *in limine*
26 challenging the expert opinions offered by the opposition. Basic filed two motions *in limine*
27 (Doc. #'s 74,75) seeking to exclude expert opinions, and Plaintiffs also filed two motions *in*
28 *limine* (Doc. #'s 62,63) seeking to exclude expert opinions. The motions in question

1  essentially argue that the expert opinions offered by the opposition must be excluded because
2  the opinions lack adequate foundation. However, as discussed above, neither party has
3  actually deposed any experts in this to explore foundational issues related to the expert
4  opinions at issue. Thus, it is clear that these motions in limine pertaining to excluding expert
5  opinions are without an adequate basis. These motions in limine (Doc. #'s 62,63,74,75) are
6  **denied**. Although the Court has extended certain deadlines, including the expert deposition
7  deadline, the Court must consider Plaintiffs' interest in proceeding to trial and avoiding
8  further delay in reaching that goal. As the motion *in limine* deadline has expired, and the
9  parties have already submitted numerous motions *in limine*, the Court will not permit another
10 round of motions *in limine* following the conclusion of expert depositions as this will surely
11 result in more delay in this case.

## III. THE REMAINING MOTIONS *IN LIMINE*

### A. Unopposed Motions *In Limine*

The Court notes that the parties filed three motions *in limine* which were not opposed by any party. Pursuant to LRCiv 7.2(j), "if the opposing party does not serve and file the required answering memoranda . . . such noncompliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." As such, the Court **summarily grants** these three unopposed motions *in limine* (Doc. #'s 61, 65, 70).

### B. General Standards of Admissibility

As reflected in the motions *in limine*, the parties largely argue that various pieces of evidence are inadmissible as irrelevant or unduly prejudicial. As such, the relevant rules of evidence are summarized for purposes of reviewing the parties' motions. Fed. R. Evid. 402 provides that "all relevant evidence is admissible" and that "evidence which is not relevant is not admissible." Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 403 provides that relevant evidence may be excluded if "its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ."

**C. Remaining Motions *In Limine***

In light of the preceding rulings, three motions *in limine* filed by Basic remain to be addressed. First, Basic argues that all pictures of the decedent taken after the accident must be excluded, that the Court should limit the number of "happy family" pictures offered by the Salazars, and the Court should exclude all videotapes or pictures taken of emergency personnel, vehicles and equipment not taken at the scene of the accident. *See* Doc. #71. In response, Plaintiffs agree that they will not offer any pictures of the decedent taken after the accident. As such, this portion of Basic's motion is granted. As to "happy family" pictures, Plaintiffs respond that they only plan to submit approximately 34 photographs which memorialize special occasions such as vacations, birthdays, and weddings; Plaintiffs estimate that offering this evidence will take approximately 90 minutes. The Court finds that the number of photographs and time dedicated to this issue by Plaintiffs' is reasonable, and denies Basic's motion pertaining to this issue. Although not taken at the scene of the accident, Plaintiffs argue that videotapes or pictures they took of emergency personnel, vehicles and equipment are relevant as they simply help to set the scene of the accident, and otherwise help to illustrate the general scene of the accident to show why Basic was negligent in failing to properly notice the preexisting accident and emergency restrictions which led to the fatal collision with Fortino Salazar. The Court finds that this evidence is relevant and outweighs any prejudice to Basic; Basic is free to cross-examine the relevant witnesses and highlight any differences between the actual scene of the accident and the depictions offered by Plaintiffs. This portion of Basic's motion *in limine* is denied.

Next, Basic argues that eyewitnesses at the scene of the accident should not be permitted to testify as to their estimates of the speed of Fortino Salazar's and Basic's vehicles as they are not qualified as experts to offer such testimony. *See* Doc. #73. However, lay witnesses such as the eyewitnesses at issue are routinely permitted to offer their estimates as to speed, and such testimony is relevant to the negligence issue in this case. *See* Fed. R. Evid. 701 ("If

1  the witness is not testifying as an expert, the witness' testimony in the form of opinions or
2  inferences is limited to those opinions or inferences which are (a) rationally based on the
3  perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the
4  determination of a fact in issue, and (c) not based on scientific, technical, or other specialized
5  knowledge . . ."). Basic's motion is denied.

6  Lastly, Basic argues that Plaintiffs' failed to timely disclose the names of certain witnesses
7  and that Plaintiffs should therefore be precluded from relying on the testimony of any of
8  these witnesses. *See* Doc. #72. In response, however, Plaintiffs point out that they did in fact
9  disclose all trial witnesses in a timely manner, and they attach an exhibit reflecting their
10 initial disclosures which shows that the witnesses were timely disclosed. Basic's motion
11 seems to be based on a clerical error whereby a page from the initial disclosures appears to
12 be missing. Thus, Basic's motion is denied.

## IV. **CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

(1) The parties' motions *in limine* and Basic's Discovery Motion are **granted in part and denied in part** as discussed in the text of this Order;

(2) By no later than **May 21, 2007**, the parties shall submit: (a) one set of stipulated jury instructions that both parties agree are appropriate for trial; (b) jury instructions that the parties can not agree on; to the extent a party opposes a proposed jury instruction, that party shall specifically explain why that instruction is inappropriate and cite authority to support the opposition; (c) proposed voir dire; and (d) proposed jury verdict forms;

(3) The Pretrial Conference shall be held on **June 25, 2007 at 2:00 p.m.**;

(4) The jury trial in this case shall commence on **July 24, 2007 at 9:30 a.m.**

DATED this 22nd day of December, 2006.

*Frank R. Zapata*
FRANK R. ZAPATA
United States District Judge

- 12 -